FIRST BANK and Sam J. Brown,
Trustee, Petitioners,

v.

TONY'S TORTILLA FACTORY, INC., Ray Villasana, Betty Villasana, Emma Romero Villasana, Gudelia Villasana Villegas, Henry Villasana, & Esther Wigley, Aurora Villasana Stanley, and Linda Zepeda, Respondents.

No. D–4093.

Supreme Court of Texas.

Argued Dec. 6, 1993.

Decided May 11, 1994.

Kathleen Walsh Beirne, Griffin & Laser, L.L.P., Houston, for First Bank.

Gregg C. Laswell, Andrews & Kurth, L.L.P., Houston, for Sam J. Brown, Trustee.

Lynn E. Saarinen, Houston, Jimmy Phillips, Jr., Angleton, for respondents.

GONZALEZ, Justice, delivered the opinion of the Court, in which all Justices join.

The issue in this case is whether a bank's fee for checks drawn on an account with insufficient funds ["NSF fee"] constitutes usury. At the conclusion of the plaintiffs' case, the trial court directed a verdict in favor of First Bank on the plaintiffs' usury claim. The court of appeals reversed and remanded the usury cause of action. 857 S.W.2d 580, 591. We hold that as a matter of law the NSF fees in this case are not interest. Thus, there can be no usury. Accordingly, we reverse the judgment of the court of appeals in part as to the usury claim, and render judgment that plaintiffs take nothing against First Bank on the usury cause of action. We otherwise affirm the judgment of the court of appeals.

## I.

Tony Villasana established Tony's Tortilla Factory in 1935. Sometime after Mr. Villasana's death in 1974, the Villasana family formed Tony's Tortilla Factory, Inc. ("Tony's"), giving fifty-one percent ownership to Mr. Villasana's widow and the remaining ownership to the Villasana children.

In August 1983, Tony's borrowed $380,-000.00 from First Bank, backed by a promissory note with a five-year term. The note was secured by a deed of trust pledging certain properties owned by the Villasanas. Tony's also established a $60,000.00 revolving line of credit with First Bank. In April 1984, Tony's began to experience internal accounting and bookkeeping difficulties due in part to the loss of key personnel and to the conversion of its bookkeeping to a computerized system. By August 1984, Tony's had drawn on its line of credit up to the limit, at which time the parties converted the line of credit into a loan backed by a second promissory note.

Tony's also had two checking accounts with First Bank, an operating account and a payroll account. In December 1984, these accounts were overdrawn—the operating account by $72,000.00, and the payroll account by $16,000.00. Between April and December 1984, Tony's wrote 2,165 checks for which there were insufficient funds in the accounts. Between April and December 1984, First Bank imposed NSF fees of $20.00 per check against Tony's totalling $47,600.00. During this period First Bank advanced $1,124,-984.99 to cover the checks.

In December 1984, Tony's consolidated the original loan and the line of credit loan into a new loan for $500,000.00. The December 1984 loan also brought the checking accounts to a positive balance. First Bank secured the December 1984 loan with deeds of trust on property owned by Tony's and on property owned by the Villasana family in Austin and Houston.

Tony's defaulted on its debt to First Bank, and in January 1986, the Bank instituted foreclosure proceedings against real property securing Tony's debt. Tony's and several members of the Villasana family sued First Bank and Sam Brown, the trustee on the deed of trust for the real property used as security for the notes executed by Tony's.[1] The plaintiffs alleged causes of action for undue influence, negligence, gross negligence, and conversion against the Bank. The plaintiffs also asserted wrongful foreclosure, DTPA violations, and civil conspiracy causes of action against both First Bank and Mr. Brown. Finally, the plaintiffs alleged that the NSF fees constituted usury. The plaintiffs claimed that the NSF fees were profitable to First Bank, a charge for the use of the bank's money which was advanced to pay the bad checks, and in excess of the amount allowed by law.

The trial court struck an attempted intervention by other Villasana family members and granted First Bank's motion for a directed verdict on the usury claim and on the wrongful foreclosure claims. The court rendered judgment based on the jury verdict that plaintiffs take nothing against First Bank, and awarded $60,600.00 to the Bank on its counterclaim. Additionally, the trial court directed a verdict for Mr. Brown and rendered judgment based on the jury verdict that the plaintiffs take nothing against Mr. Brown. The court of appeals vacated the trial court's order striking the plea in intervention, severed the intervenors' claims, reversed on all causes of action insofar as they concern the intervenors, and remanded for trial. The court of appeals otherwise affirmed the judgment of the trial court. As to the usury claim, the court of appeals reversed and remanded, holding that "there [was] enough evidence to go to the jury on ... whether service charges for overdraft protection constituted interest on a loan." 857 S.W.2d at 587.

## II.

In the case before us, although the plaintiffs originally attacked the reasonableness of

---

1. The respondents, appellants, and plaintiffs below in this case are Tony's Tortilla Factory, Inc., Gudelia Villasana Villegas, and Ray, Betty, Emma, and Henry Villasana (plaintiffs). The respondents, appellants, and intervenors below are Mary Esther Villasana Wigley, Aurora Villasana Stanley, and Linda Villasana Zepeda (intervenors).

the NSF fees as unconscionable under the DTPA, the jury's adverse findings[2] on the DTPA claim were not challenged by Tony's in this Court. The only issue before us is whether the NSF fees constitute usury.

■ A usurious transaction is composed of three elements. There must be (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). The parties acknowledge that in this case there was a loan—honoring a check drawn on insufficient funds—and an obligation to repay the bank for the funds advanced. However, the parties disagree on whether the NSF fees constitute interest.

■ Interest is compensation for the use, forbearance, or detention of money. TEX.REV.CIV.STAT.ANN. art. 5069–1.01(a) (Vernon 1987); *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985). Usury is *interest* in excess of the amount allowed by law. Art. 5069–1.01(d) (emphasis added). If there is no interest, there can be no basis for usury. *Texas Commerce Bank v. Goldring,* 665 S.W.2d 103, 104 (Tex.1984); *Gonzales County Sav. & Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976). Usury statutes are penal in nature and should be strictly construed. *Steves Sash & Door Co., Inc. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex. 1988); *Goldring,* 665 S.W.2d at 104.

Fees which are an additional charge supported by a distinctly separate and additional consideration, other than the simple lending of money, are not interest and thus do not violate the usury laws. *Goldring,* 665 S.W.2d at 104; *Freeman,* 534 S.W.2d at 906; *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709, 712

(1942). Several Texas cases have recognized that certain charges are not considered interest. *Goldring,* 665 S.W.2d at 104 (attorney's fee); *Stedman v. Georgetown Sav. & Loan Ass'n,* 595 S.W.2d 486, 489 (Tex.1979) (commitment fee); *Freeman,* 534 S.W.2d at 906 (commitment fee); *Southland Life Ins. Co. v. Egan,* 126 Tex. 160, 86 S.W.2d 722, 724–25 (1935) (prepayment penalty); *Bearden v. Tarrant Sav. Ass'n,* 643 S.W.2d 247, 249 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) (prepayment penalty); *Morris v. Miglicco,* 468 S.W.2d 517, 519 (Tex.Civ.App.— Houston [14th Dist.] 1971, writ ref'd n.r.e.) (brokerage fee).

■ A court may look past the label of the fee to determine if a fee is a service charge or interest. *Freeman,* 534 S.W.2d at 906. Whether a fee is interest or a service charge is a question of fact for the jury when there is any dispute in the evidence as to whether a fee is actually for an additional consideration, *Goldring,* 665 S.W.2d at 104, or is merely a device to conceal usury. *Freeman,* 534 S.W.2d at 906. In *Freeman,* the true nature of a "loan fee" was not established, and thus there was a fact issue as to whether or not the fee was a commitment fee or a device to conceal usury. 534 S.W.2d at 906, 908–09. In *Goldring,* this Court held that attorney's fees were not interest as a matter of law when there was no dispute as to the facts or character of the fees—payment to attorneys for services rendered. 665 S.W.2d at 104.

### III.

■ In this case, there is no dispute as to the facts or character of the NSF fees. It is undisputed that each NSF fee was assessed as a processing fee for the additional work required in connection with handling the bad

---

**2.** Question No. 1 in part read as follows:

From a preponderance of the evidence, did the Defendant, FIRST BANK, engage in a false, misleading, or deceptive act or practice, or in an unconscionable action or course of action in its banking relationship with the Plaintiffs which was a producing cause of damages, if any, to any of the following Plaintiffs?

. . . . .

(2) "AN UNCONSCIONABLE ACTION OR COURSE OF ACTION" means an act or practice which, to a person's detriment:

a. Takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

b. Results in a gross disparity between the value received and consideration paid, in a transaction involving transfer or consideration.

. . . .

The jury answered "No" as to all defendants.

check. It is undisputed in the record that the decision to charge an NSF fee was a separate decision from the decision to honor or dishonor a bad check. There is no dispute that the NSF fee was charged to all customers, in the same amount, regardless of whether First Bank paid or rejected a check. It is undisputed that the amount of the NSF fee had no relationship to the amount of the funds advanced. The fact that the bank officers have authority to waive the NSF fee on occasion does not change the character of these fees. Thus, the NSF fee was not interest on the amount advanced to cover the bad checks. The NSF fees were charged for the costs of processing a check drawn on an account with insufficient funds. The mere profitability of the NSF fee to First Bank does not make the fee usurious interest.

Each NSF fee was separate and additional consideration for processing each bad check. *See Goldring,* 665 S.W.2d at 104. Thus, the NSF fee was for consideration other than the lending of money. Separate consideration was given to First Bank for the funds advanced to cover the bad checks. The separate consideration was not the NSF fee, but was Tony's implied promise to repay that advance. *See Williams v. Cullen Center Bank & Trust,* 685 S.W.2d 311, 312 (Tex. 1985) (stating that an overdraft carries with it an implied promise to repay); TEX.BUS. & COM.CODE § 4.401(a) cmt. 1 (1968) (noting that the draft itself carries with it an implied promise to reimburse the drawee). Based on these undisputed facts, we hold that, as a matter of law, the NSF fees charged in this case were not interest.[3]

We reverse the judgment of the court of appeals with respect to the usury claim and render judgment that plaintiffs take nothing against First Bank on the usury cause of action. We otherwise affirm the judgment of the court of appeals.

---

3. Due to our disposition of the usury claim, it is not necessary to address the issue of whether the plea in intervention was properly struck.