No. 04-00-00856-CV



Gordon KLATT, Sr., Gordon Klatt, Jr. and 


Klatt Hardware and Lumber, Inc.

Appellants



v.



VALUE BANK, TEXAS,


Appellee



From the 79th Judicial District Court of Jim Wells County, Texas


Trial Court No. 99-10-37965-B


Honorable Terry A. Canales, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: November 28, 2001


AFFIRMED

 Gordon Klatt, Sr., Gordon Klatt, Jr., and Klatt Hardware and Lumber, Inc. appeal the
summary judgment granted in favor of Value Bank, Texas ("Value Bank"). We affirm the judgment
of the trial court.

Background


 The Klatts own Klatt Hardware and Lumber, Inc. ("the corporation"). From 1988 to 1999,
the Klatts had individual checking accounts with Value Bank, and the corporation had a commercial
checking account. Although the Klatts sued in their individual capacity, they both testified during
their depositions that all allegations contained within the petition relate to the corporation's checking
account and not to their individual checking accounts. 

 In 1993, the corporation's commercial checking account was converted to an International
Business Checking Account. Value Bank notified the Klatts of the terms and conditions associated
with the new account. In 1995, Value Bank again notified the Klatts of new terms and conditions
associated with the International Business Checking Account. Both the 1993 and 1995 agreements
provided for a "nonsufficient funds" fee of $20 per item and a monthly service charge if the earnings
credit on balances did not exceed the calculated account charges. If the earnings credit on balances
exceeded the calculated account charges, then there was no service charge for the month. The
amount of the service charge was calculated by using a formula described in the agreements. 

 Beginning in 1998, many checks were written on the corporation's account when the account
had insufficient funds. Value Bank would honor the checks and impose a $20 nonsufficient funds
fee ("NSF fee") per item. Additionally, more times than not, the corporation would also incur a
service charge or "analysis fee," because its earnings credit on balances would not exceed the
calculated account charges. Each month, the corporation received a "Statement of Account
Analysis," which reflected these charges. The Klatts allege that from 1988 to 1999, Value Bank
debited the corporation's account for $88,526.00. 

 The Klatts and the corporation filed suit for breach of contract, violations of the Texas
Finance Code, usury, and deceptive trade practices. Value Bank moved for summary judgment,
which the trial court granted. Value Bank's motion did not specify whether it was seeking a
traditional summary judgment pursuant to Texas Rule of Civil Procedure 166a(b) or a no-evidence
summary judgment under rule 166a(i). The trial court did not clarify this point in its Order Granting
Summary Judgment. When the order granting summary judgment does not specify the grounds upon
which the trial court relied, we must affirm the judgment if any of the theories raised in the motion
for summary judgment are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380
(Tex. 1993).

Standard of Review


 To obtain a traditional summary judgment, a party moving for summary judgment must show
that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995); Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a
summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of
the nonmovant. Johnson, 891 S.W.2d at 644; Nixon, 690 S.W.2d at 549. In addition, we must
assume all evidence favorable to the nonmovant is true. Johnson, 891 S.W.2d at 644; Nixon, 690
S.W.2d at 548-49. A defendant is entitled to summary judgment if the evidence disproves as a
matter of law at least one element of the plaintiff's cause of action. Lear Siegler, Inc. v. Perez, 819
S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to summary judgment, the
burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact.
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). 

 Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground
that there is no evidence of one or more essential elements of a claim or defense on which an adverse
party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). We review a no-evidence
summary judgment de novo by construing the record in the light most favorable to the nonmovant
and disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals, Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997); Reynosa v. Huff, 21 S.W.3d 510, 512 (Tex. App.--San Antonio
2000, no pet.); Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998, pet.
denied). A no-evidence summary judgment is improperly granted when the respondent brings forth
more than a scintilla of probative evidence that raises a genuine issue of material fact. Tex. R. Civ.
P. 166a(i); Gomez v. Tri City Cmty. Hosp., Ltd., 4 S.W.3d 281, 283 (Tex. App.--San Antonio 1999,
no pet.). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than
create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence.
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 

Failure to Disclose


 The plaintiffs' second amended petition alleges that Value Bank violated section 34.303 of
the Texas Finance Code by failing to give written notice of the NSF fee. Section 34.303 provides,

 (a) Except as otherwise provided by law, a bank may charge an account
holder a fee, service charge, or penalty relating to service or activity
of a deposit account, including a fee for an overdraft, insufficient
fund check, or stop payment order.


 (b) Except as otherwise provided by the Truth in Savings Act (12 U.S.C.
Section 4301 et seq.) or other federal law, a bank shall disclose the
amount of each fee, charge, or penalty related to an account or, if the
amount of a fee, charge, or penalty cannot be stated, the method of
computing the fee, charge, or penalty. The disclosure must be made
by written notice delivered or mailed to each customer opening an
account not later than the 10th business day after the date the account
is opened. A bank that increases or adds a new fee, charge, or penalty
shall give notice of the change to each affected account holder in the
manner provided by Section 34.302 (b) for notice of an amendment
of a deposit contract.


Tex. Fin. Code Ann. § 34.303 (Vernon 1998). Section 34.302 permits a bank to amend the deposit
contract by agreement or "by mailing a written notice of the amendment to the account holder,
separately or as an enclosure with or part of the account holder's statement of account or passbook.
The notice must include the text and effective date of the amendment." Id. § 34.302(b). 

 Value Bank attached to its motion for summary judgment a copy of the corporation's
signature card and original deposit agreement, letters informing the corporation of the amendments
to its deposit agreement, and the amended deposit agreements. Appellants argue that the following
language contained in Klatt Jr.'s affidavit (1) creates a fact issue:

 Neither my father nor I have ever been able to find out how the Value Bank charges
to our account (2) were calculated. We asked the bankers how these fees were
calculated on more than one occasion, but were told that it was complicated and were
not ever furnished the formula. 

These statements in Klatt Jr.'s affidavit only show that the Klatts were unable to determine how to
calculate the fees. The statements do not controvert the fact that Value Bank disclosed the fees to
the corporation as required by section 34.303. Indeed, Klatt Jr. admitted in his deposition that he
received documents, including monthly statements, from Value Bank informing him of the fees.
Value Bank presented evidence proving that it disclosed the fees to the corporation. The corporation
did not submit evidence to controvert this fact. Therefore, the trial court properly granted summary
judgment on the failure to disclose claim.

 Breach of Contract


 The plaintiffs' second amended petition alleges that Value Bank "failed to perform and
breached its deposit agreement . . . by arbitrarily withdrawing funds from the Plaintiffs' account
without prior approval of Plaintiffs and without lawful justification." Value Bank attached the
original deposit agreement to its motion for summary judgment, along with two subsequent deposit
agreements. We enforce an unambiguous contract as written. Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996). The question of whether a contract is ambiguous is one of law
for the court. Id. "A contract is ambiguous when its meaning is uncertain and doubtful or is
reasonably susceptible to more than one interpretation." Id. We give the terms of the contract their
plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them
in a technical or different sense. Id. 

 The original deposit agreement provided that Value Bank and the corporation agree 

 to the terms of this account and the schedule of charges that may be
imposed. [The corporation] authorize[s] [Value Bank] to deduct these
charges as accrued directly from the account balance. [The
corporation] also agree[s] to pay additional reasonable charges we
may impose for services you request which are not contemplated by
this agreement. [The corporation] also agrees to be jointly and
severally liable for any account deficit resulting from charges or
overdrafts, whether caused by [the corporation] or another authorized
to withdraw from this account, and the costs [Value Bank] incur[s] to
collect the deficit including, to the extent permitted by law, [Value
Bank's] reasonable attorneys' fees. . . . From time to time [Value
Bank] may amend any terms of this agreement upon giving [the
corporation] reasonable notice in writing or by any other method
permitted by law, including, in appropriate circumstances, posting
notice in [Value Bank's] building. 


(emphasis added). Value Bank attached the affidavits of Linda Kirchoff, Assistant Vice President
of Value Bank, and Sandi Black, Chief Operating Officer of Value Bank. Both Kirchoff and Black
testify in their affidavits that they are familiar with standard bank charges and fees in the State of
Texas and in Jim Wells County. Kirchoff's affidavit states that a NSF fee of $20 per item is a
standard and customary fee in the banking industry. Black's affidavit states that the analysis fees
charged by Value Bank were reasonable and customary fees in the banking industry. Appellants did
not produce any evidence to controvert the reasonableness of the fees in question. The two
subsequent deposit agreements explicitly provided for a NSF fee of $20 per item and explain the
formula for calculating the analysis fee per month. 

 Despite the unambiguity of the contractual terms, appellants argue that Value Bank arbitrarily
withdrew funds from the corporation's account without their prior approval. In particular, appellants
rely on Klatt Jr.'s affidavit, which states that 

 [n]either my father nor I ever agreed to allow Value Bank to debit our
accounts for the large "analysis fees" that were charged to us. We did
not agree to be charged such high amounts, nor did we condone the
charges when they appeared on our bank statements. In fact, we
routinely complained to the Bank Officers of Value Bank about these
charges.


The terms of the deposit agreement, however, clearly gave Value Bank the authority to debit the
corporation's account for the charges in question. Klatt Jr.'s affidavit does not create a fact issue,
because the terms of the deposit agreement are unambiguous. See Heritage Res., 939 S.W.2d at 121.

 Moreover, in reviewing the depositions of both Klatts, it is apparent that their complaints
center on the amount of the fees in question, not on whether Value Bank had the authority to charge
the fees. Klatt Jr. admitted during his deposition that Value Bank never erroneously charged the
corporation for an NSF fee when, in fact, there were sufficient funds. 

 Q: [Value Bank] never charged you for a hot check if the check wasn't
hot, did [it]?

 A: No.

 Q: . . . your complaint is [that] you got charged when you wrote a hot
check . . . and you think [the fee] was too [high], correct?

 A: Correct.

 Q: Anything else the bank did other than that?

 A: No. That's what we're complaining about.

 Q: Now, you - your lawsuit says it's an unreasonable fee.

 A: I think it is.

 Q: And what's the basis of that thought?

 A: Well, if you take those averages that we were - that we're talking
about and if we would have been treated - treated fairly - Like there
could have been - there should have [been] some other means of
charging rather than $20 a check.

 Q: And what did you do as a result of you - Well, you saw what they
were charging you, right?

 A: Yes, sir. Yes, sir.

 Q: And you knew they were charging you how much?

 A: Well, to begin with, if my memory is right when I went through these
things, it was $15. Then it went up to $20.

 Q: So back in the beginning of [1988], you started getting charged $15
a hot check, right?

 A: Yes, sir.

 Q: And you knew that?

 A: Yes, sir.

 Q: And what did you do as a result of that?

 A: I complained to every banker that was there within that time.

 Q: And would it be fair to say that since 1988 when [Value Bank] first
started charging you those hot check fees through today, I guess,
they've continued to charge you those fees?

 A: That's correct.

 Q: . . . Are you familiar with what other banks charge people for writing
hot checks?

 A: No, sir. I've never talked to a bank to determine what kind of policies
they have.

 Because the terms of the deposit agreement were unambiguous and because the fees charged
by Value Bank conformed to the agreement, Value Bank did not breach its deposit agreement with
the corporation. The trial court properly granted summary judgment on the appellants' breach of
contract claim.

Usury


 Appellants alleged in the underlying lawsuit that each time Value Bank honored a check
when the account did not have sufficient funds, Value Bank in fact loaned the corporation the
amount overdrawn. Appellants argue that the analysis fees associated with each "overdraft was, in
reality, an interest charge for the use of the bank's money during the period between the date on
which the Bank paid the overdraft check or checks, and the date on which the [corporation]
subsequently deposited sufficient funds to cover the overdraft." Thus, appellants argue that these
"loans" were usurious. 

 In this case, the monthly analysis fee, or service charge, was calculated by comparing the
earnings credit on balances with the calculated account charges. In other words, if the corporation
maintained on average a sufficient amount of money in its account, Value Bank did not charge a
monthly analysis fee. If, on the other hand, the corporation had on average a low balance (or
negative balance in the case of overdrafts), Value Bank charged a higher monthly analysis fee. 

 Usury is contracting for, charging, or receiving interest in excess of a lawful amount. First
USA Mgmt., Inc. v. Esmond, 960 S.W.2d 625, 627 (Tex. 1997). "If there is no interest, there can be
no basis for usury." First Bank v. Tony's Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex. 1994).
Whether an amount of money is interest depends not on what the parties call it but on the substance
of the transaction. Esmond, 960 S.W.2d at 627. "Fees which are an additional charge supported by
a distinctly separate and additional consideration, other than the simple lending of money, are not
interest and thus do not violate the usury laws." Tony's Tortilla Factory, 877 S.W.2d at 287. The
Texas Supreme Court has held that a bank's fee for checks drawn on an account with insufficient
funds was supported by separate consideration and thus, was not interest. Id. at 288. The court
noted,

 It is undisputed that each NSF fee was assessed as a processing fee
for the additional work required in connection with handling the bad
check. . . . The NSF fees were charged for the costs of processing a
check drawn on an account with insufficient funds. There mere
profitability of the NSF fee to First Bank does not make the fee
usurious interest. Each NSF fee was separate and additional
consideration for processing each bad check. Thus, the NSF fee was
for consideration other than the lending of money.


Id. at 287-88 (citation omitted). Likewise, in this case, the analysis fees were charged for the costs
of servicing the corporation's account. If the corporation had a sufficient average balance, the costs
associated with servicing the account were small, and Value Bank would not charge an analysis fee.
If the corporation had a low balance, the costs associated with servicing the account were larger, and
Value Bank would charge an analysis fee. Therefore, the analysis fee was for consideration other
than the lending of money and was not interest. Because the fee was not interest, it cannot be
usurious. The trial court properly dismissed appellants' claim for usury. 

 Compensation Greater than Allowed by Law


 Appellants also alleged in their petition that Value Bank violated section 302.002 of the
Texas Finance Code by charging more interest than allowed by law with regard to the analysis fees.
Because we have held that the analysis fee was not interest, Value Bank could not have violated
section 302.002. Thus, the trial court did not err in dismissing this claim. 

Deceptive Trade Practices Act


 Appellants argue that Value Bank's practice of debiting the corporation's account for NSF
and analysis fees was unconscionable conduct in violation of the Texas Deceptive Trade Practices-
Consumer Protection Act. See Tex. Bus. & Comm. Code Ann. § 17.50(a)(3) (Vernon Supp. 2001).
As noted previously, Kirchoff and Black attest in their affidavits that the fees charged by Value Bank
were reasonable and customary in the banking industry. Appellants submitted no evidence to
contradict Kirchoff or Black. In fact, Klatt Jr. testified in his deposition that he has no idea what
other banks charge for similar services. Value Bank established as a matter of law that its fees were
reasonable. 

Conclusion


 The trial court did not err in granting summary judgment and dismissing appellants' claims.
We affirm the judgment of the trial court.


 Karen Angelini, Justice

Do not publish
1. Value Bank argues that we should disregard Klatt Jr.'s affidavit because it contradicts his deposition testimony.
In Cantu v. Peacher, we held that a court must examine the nature and extent of the differences in the facts asserted in
the deposition and the affidavit. 53 S.W.3d 5, 10 (Tex. App.--San Antonio 2001, pet. denied). If the differences fall
into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is
grounds for impeachment, and not a vitiation of the later filed document. Id. If, on the other hand, the subsequent
affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, the
affidavit must be disregarded and will not defeat the motion for summary judgment. Id. Comparing Klatt Jr.'s deposition
testimony to his affidavit, we recognize some variances between Klatt Jr.'s deposition testimony and his affidavit, but
we do not consider the differences to be so material that we must disregard the affidavit.
2. It is clear from Klatt Jr.'s deposition testimony that when he refers to "our account," he is speaking of the
corporation's account, not the individual accounts.