## GROVES et al. v. NATIONAL LOAN & INVESTMENT CO. OF DETROIT, MICH.

### No. 13507.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 12, 1937.

Claude Spratling, of Fort Worth, for appellants.

Frank A. Ogilvie, of Fort Worth, for appellee.

SPEER, Justice.

This action was brought by Frank M. Groves and others, alleged to be his adult children by a deceased wife, all of whom we shall hereinafter refer to as plaintiffs, against the National Loan & Investment Company of Detroit, Mich., a building and loan association, incorporated under the laws of the state of Michigan, with a permit to do business in Texas, which we shall hereinafter refer to as defendant, asking for the cancellation of a note and obligation, and a certain deed of trust lien contract securing the payment of the note, and for damages for the use and value of the rentals on certain real estate situated in the city of Fort Worth taken from the possession of plaintiffs by virtue of a writ of sequestration; the description of the real estate is fully set out in the pleadings, and there being no controversy about the identity of the property, it becomes unnecessary for us to describe it here.

The pleadings of plaintiff are lengthy. The first amended petition upon which the case was tried, with the exhibits attached thereto, cover 33 pages of the transcript, and the defendant's answer covers 16 pages. We shall therefore only make such general statement of each as will fairly set forth the matters in issue, essential to a disposition of this appeal.

Plaintiffs alleged that on or about May 1, 1928, they owed the state, county, and city for taxes against the property in controversy in the sum of $732.55, for which amount they desired to procure a loan from defendant to cover. That plaintiff Frank M. Groves went to the office of one J. L. Penry, an agent of defendant in Fort Worth, to negotiate for the loan and that the said Penry, together with John Tarlton, another of defendant's agents in said city, both of whom were authorized to act

in the premises, closed the loan in the manner set out; that said agents required him to make application for a loan of $1,000 and to subscribe for ten shares of class K stock in the defendant company, of the par value of $100 per share; that further demand was made of him that he execute his note to defendant in the sum of $1,000 and transfer and assign to it the ten shares of stock, and to execute a deed of trust lien on the real estate to secure the payment of the note according to its terms; that the deed of trust erroneously recited that the note secured was given to procure funds with which to pay the sum of $803.-02, due and owing for taxes against the real estate, and subrogated the defendant to a tax lien to that extent, when the true amount of taxes due was as above shown; that the deed of trust further erroneously recited that the remainder of the loan, $196.98 over and above the amount of taxes due, was advanced by the defendant for the purpose of making necessary repairs on the property, when no such repairs were made or contemplated at the time.

Further allegations were made by plaintiffs that the difference between the taxes due in the sum of $732.55 and the sum of $14.40 expenses incurred in closing the loan, aggregating $746.95, and the total amount of the note, $1,000, was withheld by the agents, Tarlton and Penry, as commissions and bonuses for the use and benefit of defendant and that the plaintiffs did not receive said amount at the time of the loan nor at any subsequent date; that the $1,000 note was made payable in 112 monthly instalments of $13.30 each, and by the terms of the deed of trust provisions were made for the application by defendant of $7 thereof to the payment of the principal of the note, and $6.30 to the payment of interest on the obligation; that the issuance to plaintiff of ten shares of stock in said transaction was a subterfuge and fiction to enable defendant to demand and receive usurious interest on the loan of the amount of money actually received by plaintiffs; that plaintiffs in compliance with the note and deed of trust did pay to defendant 59 of said installments and ceased payments for some months, when defendant paid, for the use of plaintiffs, some additional taxes on the property and renewed and extended the remainder of the original indebtedness, together with the amount so paid by it for taxes and demanded of plaintiffs to execute a note therefor in the sum of $900, and again subscribe for class K

stock of nine shares in a similar manner to the original transaction.

The various calculations, charges, credits, and payments and the respective distribution of each as shown by the petition are very complicated and difficult for us to thoroughly understand, but we think it sufficient to say that allegation is made that the payments provided for in the original contract render it usurious and by an application of all payments made to the principal, and thus reduced and added to the taxes paid at the time of the renewal obligation would be much less than the $900 for which plaintiff was required to make his note and new deed of trust. In the petition a calculation is made of the amount remaining unpaid on the original note after an application of all payments is made to the principal, and added to the additional taxes paid by defendant at the time of the renewal, less payments subsequently made by plaintiffs, showing a balance due and owing of $111, which amount plaintiffs tendered into court for the use of defendant, and asked for cancellation of the note and lien on the property, for a writ of restitution and for damages for the rentals during the time they had been out of possession by virtue of the writ of sequestration, in the sum of $25 per month.

The defendant's pleadings consisted of a general denial and special answer, denying that either J. L. Penry or John Tarlton was its agent in the transaction pleaded by plaintiffs; that said Penry and Tarlton were local correspondents of defendant but had no authority to do anything violative of the terms and provisions of the by-laws of defendant; that if either of said parties withheld or received from plaintiff Frank M. Groves any sum or sums of money as commissions or bonuses, it was the result of personal contracts and agreements between them and the said Groves and that neither represented defendant in such transactions; that defendant never at any time had knowledge of any such reservations or retentions and received no part thereof, if the said Penry and Tarlton did in fact reserve, retain, or receive from Groves any part of said principal loan; that such acts, if any, on the part of Tarlton and Penry were without the authority, sanction, or ratification by defendant.

Defendant further averred it received from Frank M. Groves, on or about May 1, 1928, an application for a loan of $1,000

for the purpose of paying delinquent taxes against the property in controversy; that there was due the city of Fort Worth for taxes, the sum of $531.72 plus court cost of $11.25, and there was due the state and Tarrant county past-due taxes in the sum of $260.05, and that the remainder of the $1,000, to wit, $196.98, was to be used for repairs on the building on the real estate; that under defendant's plan of making loans, as provided by its by-laws, it requested the said Frank M. Groves 'to purchase ten shares of its class K stock of the par value of $100 and to execute his note to defendant in the principal sum of $1,000, payable in 112 monthly installments of $13.- 30 each. As security for the payment of said note, it required the said Groves to transfer the ten shares of stock to defendant and to execute a deed of trust lien on the real estate subrogating defendant to the tax liens held by the taxing bodies to which the delinquent taxes were due; that said Groves complied with all said requirements, whereupon defendant issued its check in the sum of $1,000, payable to Frank M. Groves and John Tarlton jointly, and that the check was subsequently indorsed and cashed, and that Groves received the full amount thereof.

It was further alleged by defendant that simultaneously with the delivery to Groves of the check, he executed and delivered to defendant the following affidavit:
"State of Texas
"County of Tarrant

"Before me, the undersigned authority, a notary public in and for Tarrant County, Texas, on this day personally appeared F. M. Groves, who being by me duly sworn on oath says:

"That as survivor of community of himself and his deceased wife, S. C. Groves, he is the owner of Lot 4 (less west 4 ft.) in Block 1, of J. C. Terrell's Addition to the City of Fort Worth, Tarrant County, Texas, which property he is using and claiming as the community homestead actually occupying the same at this time as his homestead;

"That this affiant has applied to The National Loan and Investment Company of Detroit, Michigan, for a loan of $1,000.00, money to be used for the following purposes:

"To pay City Taxes against said property for the years 1918 and 1921 to 1927 inclusive, amounting to $531.72 plus court costs of $11.25;

"To pay State and County taxes against said property for the years 1920 and 1922 to 1927, inclusive, amounting to $260.05;

"Which taxes constitute a' lien against said property, and at the request of this affiant the said Company has advanced to this affiant the money to pay said State, County and City taxes;

"That the balance of said $1000.00 is used in needed repairs on said dwelling and to protect said property from further deterioration and to preserve said property and to maintain it in proper repair, all of which is necessary and urgent, and this affiant hereby confesses a lien to the extent of $1000.00 against said property in favor of the said The National Loan and Investment Company of Detroit, Michigan.

"F. M. Groves.
"Subscribed and sworn to before me, by F. M. Groves, this the 26th day of May A. D. 1928.
"John Tarlton.
"[Seal]
"State of Texas
"County of Tarrant

"Before me the undersigned authority, a Notary Public in and for Tarrant County, Texas, on this day personally appeared F. M. Groves, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this the 26th day of May A. D. 1928.
"John Tarlton
"Notary Public in and for
Tarrant County, Texas."

Admission was made by defendant that Groves had paid 59 of said installment payments of $13.30 as they matured, and that under the terms of the contract such installments were to be applied, $7 on the principal and $6.30 to accrued interest at the rate of 07.56 per cent; that said 59 installments paid said obligation up to April 1, 1933, at which time Groves ceased making payments and on January 1, 1934, a renewal and extension contract was made between the parties for the amount remaining unpaid, which was alleged to be $900.

The plaintiffs had pleaded the defendant rendered them a statement of the condition of the loan at the time of the renewal contract, and the allegations of defendant setting out the various items when summed

512

up show plaintiffs' indebtedness on January 1, 1934, to be as follows:

"Credits:
| | |
|---|---|
| "59 payments on 10 shares of stock at $7.00.. | $ 413.00 |
| Accrued credits on stock payments to 1-1-'34 | 66.40 |
| 59 interest payments at 07.56% of $6.30...... | 371.70 |
| Two cents paid to balance account......... | .02 |
| Total ...................................... | $ 851.12 |

"Debits:
| | |
|---|---|
| "Original note ................................ | $1000.00 |
| 07.56% interest at $6.30 (5-1-28 to 1-1-34).... | 428.40 |
| Delinquent taxes paid 12-26-33.............. | 292.81 |
| Balance carried on book credit to balance stock shares ............................. | 21.78 |
| Penalties for delinquent instalments....... | 8.13 |
| Total ...................................... | $1751.12 |
| Balance ................................... | 900.00" |

Allegation was made by defendant that plaintiff Frank M. Groves executed the renewal note for $900, and again purchased nine shares of class K stock, transferred it to defendant to secure the new note, along with a deed of trust lien on the property as he had done in the former transaction; that he made certain installment payments thereon and later again defaulted; that at the time of instituting this suit by plaintiffs the accrued interest on the obligation at the rate above shown was greater than the amount plaintiff had paid, leaving a balance unpaid of $900.08.

The defendant pleaded in cross-action against Frank M. Groves for judgment for its debt and 10 per cent. attorneys' fees as per the terms of the note and obligation. Allegation was made that plaintiff Frank M. Groves owned an undivided one-half interest in the property and the other five plaintiffs owned each an undivided one-fifth of one half thereof; that two of the plaintiffs owning one-fifth of a half each had conveyed their interests in the land to Frank M. Groves; prayer was for the amount shown to be due, including 10 per cent. attorneys' fees as provided in the note and for a foreclosure of the tax lien against all parties as against the property, and against seven-tenths interest of Frank M. Groves for the remainder of the debt over and above that secured by a tax lien.

The case was tried to a jury on special issues and such issues as were asked and answered were against plaintiffs' contention. Judgment was rendered against plaintiffs upon their demand and for defendant on its cross-action. From the judgment, plaintiffs have perfected this appeal.

Defendant has objected to a consideration by us of the brief of plaintiffs, assigning many reasons for its contention, some of which must be sustained by us while others will be overruled, and our conclusion hereinafter set out on the errors assigned will be sufficient to show our idea of the merit in the objections urged.

As we understand the contention of plaintiffs on this appeal, there are only two real propositions involved, they being (a) Did the original contract, independent of the stock sale, show upon its face to be usurious? and (b) Did the defendant, by means of requiring plaintiffs to purchase stock and the application of $7 from each installment to the liquidation of the principal of the note, thus evade the usury laws of this state?

There is in the statement of facts a table of calculations based on the class of loan made to plaintiffs which shows that the credits allowed for all payments claimed by them to have been made, on a loan of $1,000 would be less than 10 per cent. per annum. In fact, it is not contended by plaintiffs that the amount so paid would be usurious if the loan was really $1,000, but their contention is that the loan was in fact only $732.55, the amount claimed by them to be due for unpaid taxes, and that the excess over that amount up to $1,000 was retained and withheld by Penry and Tarlton at the time the loan was closed, and that the retention was for the use and benefit of defendant.

The burden of proof was on plaintiffs to establish these allegations, and procure a jury finding to that effect. This was not done. The nearest approach to such a finding was against the contention of plaintiffs. The court submitted special issues to the jury inquiring if J. L. Penry was vice president and general agent for defendant and the jury found he was such officer and agent but further found by a subsequent issue that Penry did not receive or retain from Groves any part of the $1,000 loan as commissions or bonuses. The plaintiffs did not request a similar issue inquiring if Tarlton was the agent of defendant nor whether he retained any part of the money for any purpose.

If such an inquiry as to Tarlton had been made and even if it had been answered favorable to plaintiffs, absent the further inquiry and favorable answer that such retention or charges were made with the knowledge and consent of the defendant, and that it received the benefit of such retentions, plaintiffs could not recover. We

need not cite authorities holding that if defendant attempted to loan plaintiff $732.55 and took his note for $1,000 and only delivered to plaintiff the former amount, or if delivering the latter sum required him to return the difference, the defendant would only be entitled to charge interest on the amount actually received by plaintiffs. See Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939 and cases there cited.

The test of the transaction was that, even though Tarlton and Penry did retain from plaintiffs the difference in the amount claimed by plaintiffs to be due for taxes and the amount of the note, it was incumbent on plaintiffs to show such retention was with the knowledge and consent of defendant, and that it received the benefit of such act.

In the case of T. J. Williams et al. v. J. W. K. Bryan, 68 Tex. 593, 5 S.W. 401, the Supreme Court, speaking through Judge Gaines, said: "Whether, in a transaction of this character, a payment by the borrower to the agent of the lender of a fair compensation for his services in effecting the loan, though with the knowledge and consent of the latter, should in any case be held to make the contract usurious, may be doubted. But, to our minds, it is manifestly unjust to hold a loan usurious when the lender has exacted only the lawful interest, because his agent, without his knowledge or consent, has received of the borrower for his own benefit an additional sum, which, with the interest contracted for, exceeds the amount permitted by law to be demanded for the use of the money."

In the case of Ballard v. Shock (Tex.Civ.App.) 91 S.W.(2d) 385, 386, the court had under consideration a similar question to that before us, the borrower paid one Gay a commission or bonus to procure a loan for him. There the court said: "It appears that the plaintiff, the borrower, paid said Gay $500 to aid him in securing a loan from the defendant Shock who is not shown by the evidence to have had any knowledge or connection with this arrangement between Gay and Ballard, or any interest therein. So far as the evidence shows, the $500 was in the nature of a bonus and was no part of the compensation for the use of the money loaned."

To the same effect is the holding in the cases of Carden v. Short (Tex.Civ.App.) 31 S.W. 246, writ of error refused; National Life Insurance Co. v. Schroeder (Tex.Civ.App.) 94 S.W.(2d) 868, and many cases there cited.

The plaintiffs in the case at bar made no effort to establish as a fact that any sum or sums retained by Tarlton and Penry, if any was retained, was with the knowledge or consent of the defendant, or that it received any part of such retention, if it was retained.

There is in plaintiffs' brief a contention that they requested the submission of an issue in these words: "What sum of money from the cashier's check in question to the tax collectors of Fort Worth, Texas, and Tarrant County, Texas, on May 25, 1928, did plaintiffs receive benefits?" This requested issue was refused by the court, and we think properly so. It was not complete, nor indeed did it present for determination any ultimate fact issue. If the requested issue had been prepared and submitted in proper form, and answered favorably to plaintiffs, it would have determined only an evidentiary matter; whether or not plaintiffs received the "benefits" from a transaction could be construed in many ways, and subject to all of the things we have mentioned, the requested issue failed to place the burden of proof on either party, and in no respect was it such as the court could properly submit in the form presented. In Tex.Jur., vol. 41, p. 150, § 245, it is said of requested issues:

"They should be presented in such form that they may properly be given."

In Speer's Special Issues, p. 371, § 251, it is said: "Where one is put to his request for an issue in form, his request must be complete in every essential. It is never error for the trial court to refuse a request that would be ineffectual for want of some indispensable element, nor is it ever error to refuse a requested instruction or issue that would be misleading, or unintelligible to the jury. In short, the request should be such as that it would be the duty of the court to submit it as presented."

The case as pleaded by plaintiffs, to constitute usury, must of necessity show the defendant received or retained a portion of the amount represented by the note of plaintiffs, or at least had knowledge that Tarlton and Penry or one of them retained or held back a portion of the loan for the use and benefit of defendants; to do this the burden of proof was on plaintiffs to establish that fact, and upon their failure to do so, could not recover.

514

■ As we have said, to render the note usurious it was necessary for plaintiffs to establish that defendant did not furnish to them the amount recited in the note, but a sum sufficiently less that the interest charged would be more than the statutory rate. A jury verdict to that effect was necessary. It was an essential, if not the controlling element, in plaintiffs' case, and having failed to request an issue to establish the fact, or object to the court's charge because of a failure to incorporate a suitable issue on the subject, it must be held that it was waived by plaintiff. It cannot be said that independent of a jury finding on this question the court could have determined it as supporting a judgment, since it was not incidental to or supplemental of any other ultimate fact issue in the case. Nor was it incumbent upon the defendant to request such an issue and thus assist plaintiffs in the discharge of their obligation. We are supported in this holding by the case of Dallas Hotel Co. v. Davison (Tex.Com.App.) 23 S.W.(2d) 708, and the many authorities there cited.

■ The second contention of plaintiffs, as hereinbefore indicated, was that the requirement by defendant to compel plaintiff to subscribe for stock in defendant company was a subterfuge by defendant to evade the usury laws. As we view this case, it is unnecessary to discuss at length this proposition. Nor does it appear to be material whether the defendant could require the purchase of stock of class K, or any other kind. The question has been many times before the courts of this state and so far as we have been able to find, it has never been held that such a requirement was an infringement of any statutory right of a borrower so long as the interest demanded in the whole contract was not in excess of the rate permitted by law. The test of whether or not usury was charged and paid is determined in this case by (a) the amount of the loan made by defendant to plaintiffs, and (b) the total amount of interest charged and collected for the time covered. If from these calculations usurious interest was paid, then all payments should be credited on the principal; while upon the other hand, if it does not thus appear that the contract was usurious, the application of interest paid would not be credited on the principal. The true amount remaining unpaid on the note being thus determined, the amount of the renewal note or extension agreement, made January 1, 1934, would be arrived at. If, as we have seen, plaintiffs had not established the fact that the loan was really $732.55 instead of $1,000, it could make no difference to plaintiffs' rights whether they had subscribed for stock and given the note for $1,000 in payment or borrowed that amount and executed a note for it. All that mattered to them was, did they get credit for the 59 payments of $7 each on the principal and as many installments of $6.30 on interest, and did the amount paid for interest exceed 10 per cent. per annum?

From what we have said, it must be found that plaintiffs did not establish the fact that they received in the loan less than the amount of the note and that they must pay interest thereon at the rate contracted for if it does not exceed the lawful rate. We think it unquestionably true, that the record shows plaintiffs did not pay interest on the $1,000 at a rate in excess of 10 per cent. per annum.

The defendant established its cross-action and showed its right to recover in the absence of a showing by plaintiffs that the contract was usurious. The court properly rendered judgment against plaintiffs and in favor of defendant on its cross-action, with a foreclosure of the liens as they existed against the property and the interests of the respective plaintiffs.

All assignments of error by plaintiffs must be overruled, and the judgment of the trial court is affirmed.