**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2019

Lyle W. Cayce
Clerk

————

No. 18-20286

————

POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, ET AL,

Plaintiffs–Appellants

v.

PLAINS ALL AMERICAN PIPELINE, L.P. ET AL,

Defendants–Appellees

*****************************************************

JACKSONVILLE POLICE AND FIRE PENSION FUND,

Plaintiff-Appellant

v.

PLAINS ALL AMERICAN PIPELINE, L.P. ET AL,

Defendants-Appellees

————

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2404
USDC No. 4:15-CV-2540

————

No. 18-20286

Before STEWART, Chief Judge, and SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

This case proceeds from an oil spill in Santa Barbara, California, involving a pipeline owned and operated by Plains All American Pipeline, L.P. (Plains). Individuals and institutional investors who invested in entities affiliated with Plains brought suit under the Securities Exchange Act and the Securities Act alleging false and misleading statements perpetuated by Plains during the Class Period. 15 U.S.C. § 78j(b); 15 U.S.C. § 77k(a). The district court granted Plains' motion to dismiss under Rule 12(b)(6) for failure to state a claim. For the reasons expressed by the district court, we AFFIRM.

I.

Plains is a publicly-traded limited partnership and one of the largest pipeline operators in the United States. The pipelines at issue in this case are Lines 901 and 903, which run through Santa Barbara County in California. That area is a designated "high consequence area" because it is environmentally sensitive. During the Class Period,[1] these two pipelines comprised approximately 9–10% of Plains' interstate crude oil pipelines in high consequence areas. The lines were less than 0.008% of the total pipelines, which measure 17,800 miles.[2] Before and during the Class Period, Plains' pipelines had a series of issues that caused Plains and its related companies to report 229 safety and maintenance "incidents" to federal regulators—more than all but three other reporting companies.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Between February 27, 2013 and August 5, 2015.

[2] We note that there was some disagreement in the district court regarding exact figures and percentages. The figures reference herein, however, are sufficient for our review.

No. 18-20286

As it is laid out in the complaint, on May 19, 2015, Line 901 burst and spilled approximately 143,000 gallons of crude oil into the Pacific Ocean and coastal areas. The spill killed nearly 200 birds and more than 100 marine mammals. State law required the company to report the spill to the National Response Center within 30 minutes of detection, but Plains waited several hours. The local fire department notified the National Response Center over two hours before Plains did. Additionally, Plains' response plan says that it should take only 15 minutes to discover a leak and shut down the flow, but instead it took an hour. The government was alerted to the spill by a 911 call from a citizen, rather than by Plains.

Throughout the Class Period, Plains continued to state that it was in compliance with applicable laws and regulations. These statements, alleged to be misleading by Appellants, were included in speeches to investors, offering materials, corporate policy documents, the company website, legislative testimony, and other sources.

A year after the Class Period ended, according to the complaint, Plains was indicted on four felony and forty-two misdemeanor counts "for discharging oil into state and federal waters, in violation of the Clean Water Act; knowingly causing a hazardous substance to spill; and knowingly making false or misleading reports after the spill." The U.S. Department of Justice (DOJ) and the California Attorney General both investigated the spill.

On January 29, 2016, Appellants filed a consolidated complaint (after first filing multiple putative securities class actions). On March 29, 2017, the district court issued an opinion and order dismissing the claims without prejudice, and with leave to amend. On May 15, 2017, Appellants filed the operative Second Amended Complaint, which outlines 17 allegedly misleading statements made by the corporation and its officers during the Class Period.

3

No. 18-20286

Appellants assert claims against the corporation, its holding company, corporate officers, corporate directors, and underwriters. The district court dismissed the complaint with prejudice on March 30, 2018.

## II.

The Fifth Circuit reviews a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). All facts in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Lovick v. Ritemoney, Ltd.,* 378 F.3d 433, 437 (5th Cir. 2004).

Section 10(b) of the Securities Exchange Act of 1934 (section 10(b)) states that "[i]t shall be unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5 then implements section 10(b), disallowing the making of an "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5.

To state a claim under section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005) (internal quotation marks and citations omitted). Omissions are material for purposes of the second element when there is a "substantial likelihood that the disclosure of the omitted fact

No. 18-20286

would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 747 (S.D. Tex. 2012) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)). The third element, scienter, requires "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *R2 Invs. LDC,* 401 F.3d at 643).

The standard for pleading securities fraud under section 10(b) is provided by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA). *See Lormand,* 565 F.3d at 239. Rule 9(b), which applies where there are allegations of fraud, requires the pleading party to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). PSLRA requires the party to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1). Additionally, the party must allege facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Section 11 of the Securities Act (section 11) prohibits false statements of material facts or omissions of material facts in registration statements. 15 U.S.C. § 77k(a). "To state a claim under section 11, the plaintiff must allege that: (1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3)

the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) (citing 15 U.S.C. § 77k(a)). Unlike a claim under section 10(b) of the Securities Exchange Act, a claim under section 11 of the Securities Act does not have a scienter requirement. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382 (1983) (emphasizing that section 11 imposes liability "even for innocent" misstatements or omissions).

Claims under the Securities Act are evaluated under the normal pleading standards. If the claim is based on the same underlying facts and allegations as a securities fraud claim under the Exchange Act, then the pleading standard is the standard contained in Rule 9(b). *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). In this case, the allegations under both the Securities Act and the Exchange Act are essentially identical. Thus, Rule 9(b) applies, and the Securities Act claims must be pled with particularity. *Id.* at 368-69.

## A.

A statement need not be an assertion of fact to be actionably false and misleading; certain opinion statements can be actionable as well, since "the disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers." *Lormand,* 565 F.3d at 248. The Supreme Court, in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* rejected the argument that opinion phrases, such as "we believe" or "we think" categorically disqualified a statement from being actionable, stating "those magic words can preface nearly any conclusion and the resulting statements, as we have shown, remain perfectly capable of misleading investors." 135 S. Ct. 1318, 1331 (2015).

No. 18-20286

Statements from documents that do not have an identified author can also be actionable. These documents or statements "may be charged to one or more corporate officers." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). However, this is not blanket liability that allows all officers to be held liable for all unattributed statements of the corporation. Instead, there must be "specific factual allegations [that] link the individual to the statement at issue." *Id.*

While materially misleading opinions are actionable, "generalized, positive statements about the company's competitive strengths, experienced management, and future prospects are not actionable because they are immaterial." *Id.* at 372. "Allegations that amount to little more than corporate 'cheerleading' are puffery . . . and are not actionable under federal securities law because no reasonable investor would consider such statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 789 (S.D. Tex. 2012).

Finally, statements made by an independent third party are generally not actionable. "The securities laws . . . do not require [a defendant] to police statements made by third parties for inaccuracies, even if the third party attributes the statement to [the defendant]." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 872 n.21 (S.D. Tex. 2001) (quoting *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 288 (4th Cir. 1993)).

Of the seventeen statements laid out in the complaint, several fall under the category of corporate cheerleading. Four of the statements that qualify as corporate cheerleading come either from Plains' Code of Business Conduct or speeches and presentations at Investors' Day events. These aspirational statements include affirmations of Plains' commitment to safety, goals it was

7

seeking to reach, and outlines of procedures. The statements did emphasize Plains' commitment to proper systems and their intention to comply with regulations, which obviously turned out to be insufficient, but the statements were generalized positive goals rather than specific promises.

Several more of the statements were not actionably false or misleading. Two of the statements were belief statements, claiming that Plains believed it was in compliance with the law and with its own risk management program. These statements were broadly applicable and therefore were not rendered false or misleading by the failures on Lines 901 and 903, which constitute a small percentage both of the overall pipelines and of the HCA pipelines. Other statements describe internal processes and procedures which, although they failed to function correctly in this instance, nevertheless existed.  Therefore, describing them is not false or misleading. Another statement describes how the spill progressed. It is a recitation of the facts as they stood at the time, although further information was discovered later. Despite the subsequent information, recounting facts that happened in the past is not inaccurate. One statement was a third-party statement made by a legislator during the California committee hearing. Patrick Hodgins, Plains' Director of Security and Safety, was testifying before the committee after the spill. He did not correct a misstatement the legislator made while asking a question. Hodgins could not be held liable for a misstatement by a third party. The last statement is an opinion statement found on the website that was too broad to be considered actionably misleading.

Two statements were deemed actionably false or misleading by the district court, and we agree. Therefore, with respect to those statements, we proceed to the second step of the inquiry—whether scienter was pled sufficiently. One specific statement was from the website and stated that

Plains "perform[s] scheduled maintenance on all of [their] pipeline systems and make[s] repairs and replacements when necessary or appropriate." Plains' slow and inadequate response to known insufficiencies in Lines 901 and 903 is directly contradictory to this assertion. Because this statement was found on Plains' website, there is no author named. For unattributed statements, there must be "specific factual allegations [that] link the individual to the statement at issue," such as "a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document, containing the statement." *Southland*, 365 F.3d at 365. Appellants attempted to meet this requirement by pointing to the fact that corporate officers often referred investors to the website, therefore vouching for the website's accuracy. This is not sufficiently specific, nor does it plead any individual's involvement in the creation of the statements. Appellants alleged that the corporate officers must have been involved in the creation of these statements because their positions were relevant to the subject matter of the statements. This, however, was not a specific, technical statement requiring any sort of expertise to formulate, and it does not reasonably follow that senior-level corporate officers must have been involved in its creation.  Appellants failed to sufficiently plead scienter regarding this statement.

The other actionably false or misleading statement is one that Hodgins made to a California legislative committee, averring that Plains had "no indication" that there was anything wrong with Line 901, which Appellants claim was objectively false. Plains allegedly had multiple indications at that time that there were issues and had not yet addressed them. The company knew of an increase in corrosion issues between the inspections runs in 2007 and 2012, and it was also aware that in a number of those areas, the corrosion

No. 18-20286

had already eaten away over 50% of the pipe wall.  Appellants argue that this misinformation shows intent to deceive because Plains had multiple reasons to believe that Line 901 was faulty. At the very least, Appellants assert that if Hodgins truly was unaware of the indications of an issue with Line 901, Plains had failed to adequately prepare an agent of the corporation, amounting to severe recklessness. The district court relied on the fact that Appellants did not make any allegations about Hodgins' level of knowledge at any point. Appellants' arguments, particularly in the Reply Brief, are convincing, but Appellants failed to actually plead those more convincing arguments in the underlying complaint. Accordingly, the district court found that Appellants failed to plead scienter with sufficient particularity. We agree.

Two potentially false or misleading statements were found in contracts with the underwriters. Under 15 U.S.C. § 77aa, underwriter agreements are required to be filed with the SEC and therefore made public; and "any person acquiring" a security for which "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact" has a cause of action to "sue . . . every underwriter with respect to such security." The liability of underwriters under section 11 is again noted in 52 F.R. 21252-01. The district court concluded that the statements were not actionable. In its initial opinion dismissing Appellants' claims without prejudice, the court concluded that falsity was not pled with particularity. In its later opinion dismissing Appellants' claims with prejudice, the court noted that the statements were in the underwriting agreements. While we agree with the final conclusion, we decline to hold that underwriting statements are per se unactionable, which is not necessary for this case. We instead hold that falsity was not pled with sufficient particularity; so the actionability of the claims is irrelevant for the purposes of this case.

10

B.

Section 11 differs from section 10(b) in its lack of an intent requirement, which renders it a strict liability offense. *Omnicare,* 135 S. Ct. at 1331 n.11 ("[Section] 11 discards the common law's intent requirement, making omissions unlawful—regardless of the issuer's state of mind—so long as they render statements misleading."). Defendants may assert due diligence as an affirmative defense, but they bear the burden of demonstrating it. *Herman & MacLean,* 459 U.S. at 382.

Therefore, the success of section 11 allegations rests on the falsity of the statements at issue. Like section 10(b), these statements can include opinions. However, "[t]he reasonable investor understands a statement of opinion in its full context, and [section] 11 creates liability only for the omission of material facts that cannot be squared with such a fair reading." *Omnicare*, 135 S. Ct. at 1330. Thus, "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.*

The analysis for falsity does not differ from the similar analysis under the Exchange Act. The scope, however, is different. Section 11 only applies to statements in the SEC filings. 15 U.S.C. § 77k(a). Therefore, section 11 claims would only apply to eight of the seventeen statements, and none of the statements were found to be actionably false.

III.

Accordingly, for the reasons laid out by the district court, as well as above, we AFFIRM.