Reversed and Remanded in Part, Reversed and Rendered in Part, and
Majority and Dissenting Opinions filed March 8, 2007








Reversed and Remanded in Part, Reversed and Rendered
in Part, and Majority and Dissenting Opinions filed March 8, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00917-CV

_______________

 

LAWRENCE E. STURM, Appellant

 

V.

 

GUENTHER MUENS, Appellee

                                                                                                                                               


On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 01-49507

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N

 

In this promissory note dispute,
Lawrence E. Sturm appeals a judgment in favor of Guenther Muens on the grounds
that the trial court erred by granting: (1) summary judgment in favor of Muens
on his promissory note claim and against Sturm=s counterclaim for usury because
there is a fact question whether the note is usurious; and (2) judgment on the
jury verdict for fraud because there is no evidence to support it.  We reverse
and remand in part and render in part.

 








Background

In 1999, Sturm executed a promissory
note (the Anote@) to Muens in the amount of $85,000, payable within one year, at an
annual interest rate of 18%.  Sturm paid a total of $18,502.65 on the note, and
Muens filed suit to collect the balance, also alleging fraud.  Sturm asserted
usury as a defense and as a counterclaim.  The trial court granted Muens=s motion for partial summary judgment
on the note claim, and, after a jury trial, entered judgment on the verdict in
favor of Muens on the fraud claim,[1] and ordered
that Sturm take nothing on his usury counterclaim. 

                                                                         Usury

Sturm=s first issue challenges the summary
judgment awarding recovery on the promissory note claim and the denial of his
counterclaim for usury on the ground that there is a fact question as to
whether the note was usurious.

A traditional summary judgment may be
granted if the motion and summary judgment evidence show that, except as to the
amount of damages, there is no genuine issue of material fact and the moving
party is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  To avoid a summary judgment by
asserting an affirmative defense to the claim for which summary judgment is
sought, a nonmovant must adduce evidence raising a fact issue on each element
of the defense.  See Moore Burger, Inc. v. Phillips Petroleum Co., 492
S.W.2d 934, 936S37 (Tex. 1972).  In reviewing a summary judgment, we examine
the entire record in the light most favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts against the motion.  Sudan v.
Sudan, 199 S.W.3d 291, 292 (Tex. 2006).








Contracts for usurious interest are
contrary to public policy and prohibited by the Texas Constitution and Texas
Finance Code.  See Tex. Const.
art. XVI, ' 11; Tex. Fin. Code Ann. '' 302.001(b), 305.001-.008 (Vernon
2006 & Supp. 2006).  Usurious interest is compensation for the use,
forbearance, or detention of money that exceeds the applicable maximum amount
allowed by law.  Tex. Fin. Code Ann.
' 301.002(a)(4), (a)(17) (Vernon Supp.
2006).  A usurious transaction thus consists of: (1) a loan of money; (2) an
absolute obligation to repay the principal; and (3) the exaction of greater
compensation than is allowed by law for the borrower=s use of the money.[2] 
Conversely, a charge which is supported by distinctly separate and additional
consideration, other than the lending of money, is not interest for usury
purposes.[3]  However, any
dispute in the evidence as to whether a charge in addition to stated interest
is actually for separate consideration, rather than a device to conceal usury,
raises a fact issue.[4]

                                                                    Note
Claim








In this case, Sturm=s summary judgment response (the Aresponse@) contested the motion for summary
judgment on the grounds that: (1) the highest legal interest was 10%;[5]
(2) the loan transaction included a written agreement (the Aagreement@) in which Sturm assigned certain
accounts receivable to Muens for ten dollars consideration and was entitled to
repurchase them on the maturity date of the note for $35,700 (the Arepurchase amount@); and (3) when added together, the
18% interest rate stated in the note plus the $35,700 payment to be made under
the agreement amounted to a usurious interest rate of 60%.  Muens=s reply to the response asserted that
the agreement alleged by Sturm could not be considered because: (1) the
interest rate applicable to the loan is established by the note alone; (2) the
agreement does not describe the repurchase amount as interest; and (3) the note
was the final agreement between the parties, and evidence concerning the
agreement was therefore barred by the parol evidence rule.

The agreement states that as
consideration for the purchase of the receivables from Sturm, Muens agreed to
pay ten dollars and to fund the $85,000 loan under the note.  In return, Muens
was to  be repaid the $85,000, 18% interest on that amount for one year, plus
$35,700 (or retain Sturm=s receivables).  Because there is no evidence that the assignment
of the receivables is supported by any consideration other than making the
loan, the agreement, if not barred by the parol evidence rule, would be some
evidence that the $35,700 payment is compensation for the use of the money
loaned and thus create a fact issue as to whether the note was usurious.

AWhen parties have concluded a valid
integrated agreement with respect to a particular subject matter, the [parol
evidence] rule precludes the enforcement of inconsistent prior or
contemporaneous agreements.@  Hubacek v. Ennis State Bank, 317 S.W.2d 30, 31 (Tex.
1958) (emphasis added).  However, because the rule applies only where such
evidence is offered for the purpose of enforcing an inconsistent
agreement (i.e., determining the terms of an agreement that is to be
enforced), it does not apply to evidence offered for the purpose of showing
that no agreement is to be enforced at all, such as by reason of illegality,
fraud, duress, mistake, lack of consideration, or other invalidating cause.  See
Restatement (Second) of Contracts
' 214 (1981).[6] 
Therefore, the parol evidence rule does not bar evidence offered to show that a
loan transaction is usurious.  See Smith v. Stevens, 81 Tex. 461, 16
S.W. 986, 987 (1891).








In Transamerican,
Transamerican Leasing Company sued Three Bears, Incorporated for breach of
three agreements by which Three Bears leased restaurant equipment from
Transamerican.  Transamerican Leasing Co. v. Three Bears, Inc., 586
S.W.2d 472, 473 (Tex. 1979).  Three Bears challenged the trial court=s exclusion of testimony showing that
the parties: (1) had also entered into an oral agreement whereby Three Bears
had an option to purchase the restaurant equipment; and (2) had intended the
difference between the total lease payments  and the purchase cost to be paid
as interest, which would exceed an annual rate of twenty percent.  Id.
at 477.  In response to Three Bears=s contention that this evidence
should have been admitted to establish a violation of the usury statutes, the
Texas Supreme Court stated:

We hold that the evidence was properly excluded as
violative of the parol evidence rule.  The written lease agreements contain no
provision giving Three Bears an option to purchase the equipment.  Furthermore,
each lease states that it "constitutes the sole agreement of the parties
with respect to the subject matter thereof."  Thus, the claimed purchase
option agreement is inconsistent with the lease contracts and not merely
collateral to them.  When such a purchase option agreement is inconsistent
with, and not merely collateral to, a lease contract, the parol evidence rule
applies.  Hobbs Trailers v. J. T. Arnett Grain Co., Inc., 560 S.W.2d 85
(Tex.1977).

 

Three Bears
contends, however, that the parol evidence rule is not applicable to situations
in which a party seeks to show that an apparently valid contract is really a
mask for usury.  As authority, Three Bears cites cases in which courts have
held that parol evidence is admissible to show that a Loan agreement, valid on
the face of the written instrument, is in fact, a usurious loan.  See,
e.g., Smith v. Stevens, 81 Tex. 461, 16 S.W. 986 (1891); F. B. & D., Inc.
v. Nathan Alterman Electric Co., 394 S.W.2d 821 (Tex.Civ.App. San Antonio 1965,
writ ref'd n.r.e.).  These cases are not applicable to this particular
case.  In order for Three Bears to establish usury, it must first establish
that the leases were not mere leases but were, instead, lease‑purchase
agreements.  Without parol evidence of the purchase option, the lease
agreements cannot constitute loan agreements.








Id. at 477S78 (emphasis added).  Importantly,
the Court acknowledged the existence of the rule that parol evidence is
admissible to show that a loan agreement, valid on its face, is, in fact, a
usurious loan, and did not suggest any disagreement with it.  Id.[7] 
Instead, it held only that where a written agreement does not purport to be a
loan transaction at all, parol evidence is not admissible to show that the
agreement is, in fact, a loan.  Id.[8]

In this case, unlike Transamerican,
the existence of a loan is clearly set forth in the note and undisputed by the
parties.[9]  Therefore,
for the purpose of showing that the note, valid on its face, is, in fact, a
usurious loan, the agreement is not barred by the parol evidence rule.








Muens also contends that the
transaction was not usurious because the agreement does not refer to an
interest rate and because he never demanded payment of the amount due under the
agreement.  However, whether an amount of money is compensation for the use of
money depends not on what the parties call it, but on the substance of the
transaction.[10]  Moreover, it is
not necessary that a demand be made for the payment of usurious interest
because  merely
contracting for it is a violation of the usury statutes.[11]  Because Sturm presented legally
sufficient summary judgment evidence to raise a fact issue on each element of
his defense for usury, the summary judgment cannot be affirmed on the
promissory note claim.  Accordingly, Sturm=s first issue is sustained as to the
promissory note claim (and usury defense).

                                                            Usury
Counterclaim

Although Sturm=s counterclaim was not expressly
addressed in the partial summary judgment proceeding or at trial, the trial
court=s judgment denied relief on it.  As a
general rule, any claim not conclusively established by the evidence and no
element of which is submitted or requested to be submitted to the jury at trial
is waived.  Tex. R. Civ. P. 279. 
In this case, a jury submission on Sturm=s counterclaim was neither submitted
nor requested to be submitted at trial.

However, the failure to request a
jury submission does not waive a claim that the trial court has already
disposed of as a matter of law, such as by granting a directed verdict.[12] 
A claim disposed of by summary judgment, such as Muens=s note claim in this case, also falls
within this exception.[13]  In
addition, a complaint is preserved for review on appeal if it was made known to
the trial court by a timely request, the grounds for it were made known to the
trial court with specificity, and the trial court ruled on the request
expressly or implicitly.  Tex. R. App.
P. 33.1(a).








Our record in this case does not
establish whether Sturm=s usury counterclaim is based on the same factual allegations
and evidence as his usury defense (because his counterclaim pleading did not
allege any facts and Muens=s motion for summary judgment did not address the counterclaim). 
To the extent the counterclaim is based on different allegations or evidence
than the defense, Sturm did not raise those allegations or evidence in response
to the motion for summary judgment on the note claim, and he did not offer
evidence or request a jury submission on any such allegations at trial.  In
that event, no complaint regarding the counterclaim is before us in this
appeal, and our disposition does not reach or affect the trial court=s denial of the counterclaim.

Conversely, to the extent that the
counterclaim is based on the same allegations and evidence as the defense, then
the trial court=s granting of partial summary judgment on the promissory note
claim ruled, in effect, not only that the evidence failed to raise a fact issue
on each of the elements of the defense, but also that that evidence failed to
raise a fact issue on any common elements of the counterclaim.  Although the
partial summary judgment did not purport to adjudicate the counterclaim
(expressly or impliedly), it nevertheless constituted a ruling on the legal
sufficiency of Sturm=s evidence to prove the common elements of the usury
counterclaim that remained in effect at the time of trial.  The summary
judgment would thus have been incompatible with a submission to the jury of a
counterclaim that relied on any common elements and evidence of usury as the
defense because a final judgment granting relief on both the note claim and
usury claim would contradict itself as to the legal sufficiency of that
evidence to prove those elements.  Therefore, the legal sufficiency of the
evidence to prove the counterclaim had, in effect, already been ruled upon by
the trial court, and Sturm cannot be said to have waived that counterclaim by
failing to  request a jury submission on it at trial.  Accordingly, our
sustaining of his first issue also reverses the trial court=s denial of his counterclaim to that
extent.

 

 

 

 

 








Fraud

Sturm=s second issue contends that the
trial court erred by awarding recovery on Muens=s fraud claim because there was no
evidence or, alternatively, insufficient evidence that: (1) he made a false
statement and (2) he intended to defraud Muens.[14]

In deciding a no evidence (legal
sufficiency) challenge, we determine whether there is evidence that would enable
reasonable and fair-minded people to reach the verdict under review.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In doing so,
we: (1) credit all favorable evidence that reasonable jurors could believe; (2)
disregard all contrary evidence except that which they could not ignore; (3)
view the evidence in the light most favorable to the verdict; and (4) indulge
every reasonable inference that would support the verdict.  Id.  But if
the evidence allows only one inference, we may not disregard it.  Id.

A promise of future performance, such
as to repay the note in this case, constitutes an actionable misrepresentation
if the promise was made with no intention of performing it at the time it was
made.[15]  However,
the mere failure to perform a contract is not alone evidence of such fraud.[16]
 Rather,
there must be evidence relevant to the promisor=s intent not to
perform at the time the promise was made.[17] 
This intent may be inferred from the party=s actions after
the representation is made.  Spoljaric v.
Percival Tours, Inc.,
708 S.W.2d 432, 434 (Tex. 1986).








In this case, Sturm, a real estate
developer, borrowed the $85,000 from Muens in order to pay the preliminary
expenses necessary to obtain a much larger amount of financing for a real
estate project (the Aproject@).  There is no evidence that, at the time of entering into
the note, Sturm did not intend to develop the project or to repay the note if
the larger financing was obtained.  Nor is there any evidence that Sturm did
not spend at least the amount of the loan in connection with the project. 
Rather, the evidence is uncontroverted that Sturm made a considerable effort to
obtain the financing and develop the project, but was unsuccessful; and that he
made five payments on the note totaling over $18,000 even without obtaining the
financing.

To support his contention that Sturm
did not intend to perform as promised, Muens relies on the trial testimony of
Sturm, Muens, and Mitchell Feldman, who had acted as an intermediary between
Sturm and Muens.  Feldman testified that he did not believe Sturm was honest
about his intent or the project for which the money was borrowed because: (1)
Feldman had not seen any architectural plans; (2) he was disappointed by Sturm=s presentation to a potential
investor in New York; (3) Sturm spent money to take his family to Mexico; and
(4) the project was ultimately unsuccessful.  Muens testified that Sturm told
him that in the event he was unable to obtain financing for the project to pay
Muens, he would repay the loan from his business income generated from smaller
ongoing projects.  In this regard, Sturm admitted in cross-examination that he
did not have sufficient income from other projects to repay the entire loan to
Muens.  He further testified that he used funds generated from his smaller
projects to pay off other creditors[18] but not to
repay any of the loan to Muens.








However, rather than being probative
of an intent by Sturm not to repay the note at the time it was entered into,
these facts show only that Sturm did not approach the project as effectively as
might have been possible or use all his available funds to repay the note.[19]  
If such circumstances were sufficient to establish fraud, few loan defaults
would avoid fraud liability.  On the contrary, reviewing this evidence under
the applicable standard, it does not reasonably support an inference of an
intent not to repay the note at the time it was entered.  Therefore, appellant=s second issue is sustained.

Having sustained both of Sturm=s issues, we: (1) reverse the trial
court=s judgment in its entirety; (2)
remand the promissory note claim and, to the extent applicable, as discussed
above, the usury counterclaim, to the trial court for further proceedings; and
(3) render a take-nothing judgment on Muens=s claim for fraud.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered and Memorandum
Majority and Dissenting Opinions filed March 8, 2007.

Panel consists of Justices Anderson,
Edelman, and Frost. (Frost, J., dissenting)

 









[1]           Muens made an election of remedies to
recover on the jury verdict for fraud rather than on the summary judgment for
the note balance. However, because we reverse the judgment on the fraud claim,
as discussed in the following section, we must also address Sturm=s challenges to the summary judgment.





[2]           First Bank v. Tony=s Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex. 1994); Holley v. Watts, 629 S.W.2d
694, 696 (Tex. 1982).





[3]           Tex. Commerce Bank v. Goldring, 665
S.W.2d 103, 104 (Tex. 1984).





[4]           See First Bank, 877 S.W.2d at 287; Goldring,
665 S.W.2d at 104.  With exceptions not applicable here, the usurious nature of
a contract is determined at the time of its inception.  See In re Worldwide
Trucks, Inc., 948 F.2d 976, 983 (5th Cir. 1991).





[5]           Because Muens did not dispute this
contention or otherwise address the maximum legal rate of interest in his
summary judgment materials or in his brief on appeal, and because the 60%
interest rate alleged by Sturm is well above any legal rate, we need not
address the maximum legal rate.





[6]           See generally 6 Arthur Linton Corbin, Corbin on Contracts
' 573 (1960) (recognizing that the parol evidence rule
does not apply in determining whether: (1) the parties made a contract; (2) the
contract is void or voidable for any reason; or (3) the parties assented to a
particular writing as the complete and accurate integration of that contract).





[7]           In that usury is against public policy, a
contrary rule, excluding evidence necessary to establish usury where it exists
but is not reflected on the face of a promissory note, would itself be against
public policy.





[8]           Therefore, of the three elements of a
usurious transaction, parol evidence is admissible to show  only the third, the
exaction of greater compensation than is allowed by law for the borrower=s use of the money.  See also Brannon v. Gulf
States Energy Corp., 562 S.W.2d 219, 222S23
(Tex. 1977) (holding that parol evidence was not admissible to show that a
payment, which had been clearly designated as a lease rental for an existing
lease, was instead a bonus payment for an yet-to-be executed lease).





[9]           In addition, the agreement is in writing
and signed by Muens, and he filed no verified answer denying his execution of
it.  See Tex. R. Civ. P. 93(7).





[10]         See First USA Mgmt., Inc. v. Esmond, 960 S.W.2d 625, 627 (Tex. 1997); First Bank,
877 S.W.2d at 287 (noting that courts may look past label to determine if fee
is service charge or interest); Gonzales County Sav. & Loan Ass=n v. Freeman, 534 S.W.2d 903, 906 (Tex. 1976)
(emphasizing courts examine form of transaction and its substance in
determining existence or non-existence of usury).





[11]         See Tex.
Fin. Code Ann. ' 305.001(a); Cochran v. Am.
Sav. & Loan Ass=n, 586 S.W.2d 849, 850 (Tex. 1979). The fact that Sturm
drafted the promissory note is also immaterial.  See Tanner Dev. Co. v.
Ferguson, 561 S.W.2d 777, 781 (Tex. 1977); see also Najarro v. SASI Int=l, Ltd.,
904 F.2d 1002, 1010S11 n.9 (5th Cir. 1990) (applying Texas usury law and
finding the fact that defendants structured deal did not estop them from
raising usury defense); Dunnam v. Burns, 901 S.W.2d 628, 632 (Tex. App.CEl Paso 1995, no writ).





[12]         R.R. St. & Co., Inc. v. Pilgrim
Enters., Inc., 81 S.W.3d 276, 305S06
(Tex. App.CHouston [1st  Dist.] 2001, rev=d on other grounds, 166 S.W.3d 232, 255 (Tex. 2005).





[13]         See generally 4 Roy W. McDonald & Elaine A. Grafton
Carlson, Texas Civil Practice '
22:53 (2d. ed. 2001 & Supp. 2004).





[14]         The elements of fraud are that: (1) a
material representation was made; (2) the representation was false; (3) when
the representation was made, the speaker knew it was false or made it
recklessly without any knowledge of the truth and as a positive assertion; (4)
the speaker made the representation with the intent that the other party should
act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury.  Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 211 n.45 (Tex. 2002).





[15]         See Formosa Plastics Corp. USA v.
Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998); Schindler v.
Austwell Farmers Co-op., 841 S.W.2d 853, 854 (Tex. 1992).





[16]         Formosa, 960 S.W.2d at 48; Schindler,
841 S.W.2d at 854.





[17]         See Formosa, 960 S.W.2d at 48.





[18]         Sturm testified that he chose to repay Ford
Credit because he needed to keep his truck for transportation and he repaid
loans to Citizens State Bank and Industry State Bank because those banks held
liens on essential farming equipment.





[19]         Moreover, Sturm testified that it was not
possible to prepare architectural drawings without first obtaining a parcel of
land, and both Feldman and Sturm testified that Sturm=s attempts to acquire a tract of land for the project
were unsuccessful.